Brett L. Gibbs, Esq. (SBN 251000)
Of Counsel to Prenda Law Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| AF HOLDINGS LLC, ) | **Case No. 2:12-cv-01068-LKK-KJN** |
| ) | |
| Plaintiff, ) | Judge: Hon. Lawrence K. Karlton |
| v. ) | Mag: Hon. Kendall J. Newman |
| ) | |
| PARRY BUCK, ) | Date: December 20, 2012 |
| ) | Time: 10 A.M. |
| ) | |
| Defendant. ) | **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT** |
| ) | |

## INTRODUCTION AND BACKGROUND

On April 23, 2012, Plaintiff AF Holdings LLC ("Plaintiff") filed a Complaint alleging copyright infringement against an unknown Defendant on April 23, 2012. (*See* ECF No. 1.) On May 3, 2012, Plaintiff subsequently sought *ex parte* expedited discovery in order to obtain the information of the subscriber whose IP address was observed infringing via the Internet upon Plaintiff's copyrighted work. (*See* ECF No. 7.) On May 25, 2012, this Court granted Plaintiff authority to subpoena the Internet Service Provider, Comcast, that provided the infringing IP address at the date and time in question. (*See* ECF No. 8.)

Comcast responded to the subpoena by indicating that Parry Buck was the subscriber to whom the infringing IP address had been assigned. Upon receiving this information, "Defendant was mailed letters on July 23, 2012 and August 6, 2012 to inform him of the claims Plaintiff planned to assert against Defendant." (*See* ECF No. 19-1 ¶ 5, Declaration of Brett L. Gibbs in Support of Plaintiff's Motion for Entry of Default Judgment against Defendant Parry Buck [Gibbs Decl.].) In addition, Plaintiff's counsel "contacted Defendant by telephone on August 10, 2012, at which time [Defendant] told [Plaintiff's counsel] to 'go ahead and sue him…'[paraphrasing]" (*Id* ¶ 6.) Plaintiff's counsel "contacted Defendant by telephone on September 7, 2012 to further discuss the pending litigation. At that time, Defendant informed [Plaintiff counsel] that he 'wouldn't participate' [paraphrasing] in the case." (*Id* ¶ 7.)

Subsequent to this phone call, Plaintiff filed its Amended Complaint naming Parry Buck as the Defendant in this case on September 8, 2012. (*See* ECF No. 10.) Defendant was personally served with the Amended Complaint and summons at his home on October 12, 2012. (*See* ECF No. 15.) After Defendant had been served with process, again Plaintiff's counsel "contacted Defendant by telephone on October 16, 2012 to inform him of the need to prepare a joint case management statement. [Defendant] chose not to participate in any of the necessary case management issues." (*See* ECF No. 19-1 ¶ 8, Gibbs Decl.)

On November 12, 2012, Defendant was mailed a copy of Plaintiff's Request to Enter Default. (*See* ECF No. 17 at Certificate of Service.) On November 16, 2012, Defendant was mailed a copy of Plaintiff's Motion for Default Judgment. (*See* ECF No. 20 at Certificate of Service.) On December 7, 2012, exactly **60 days** after Defendant was personally served with process, Defendant finally made an appearance in this case. As set forth more fully above, Defendant was informed of this lawsuit **8 different times**. He was properly served with process. Defendant's arguments distill to the assertion that his conduct should be excused because of his health issues. As a matter of common

sense, Plaintiff contends that, given that Defendant was able to produce a well-articulated (though legally untenable) Motion to Set Aside Entry of Default, he could have, during the appropriate time period, filed a simple Answer to Plaintiff's Amended Complaint, or even, at the very least, informed the Court or informed Plaintiff's counsel of his health issues and requested an extension. Having dealt with his own serious health issues, the undersigned is, as a general matter, sympathetic to the impact of such concerns. However, the undersigned *is not* sympathetic to willful and deliberate ignorance of one's legal obligations, or, worse, one pretending that these issues prevented him from complying where it is obvious that these issues did not prevent him from doing so.  Defendant could have taken one of the aforementioned steps in order to demonstrate his desire to comply with those obligations; instead, he chose to do ***nothing***. Indeed, Plaintiff's counsel's discussions with Defendant demonstrated nothing further than a desire on the part of Defendant to not take any action. (*See*, generally, ECF No. 19-1.) There was absolutely no mention of any medical issues during any communications with Plaintiff's attorney.  As a matter of principle, Defendant should not be rewarded for his irresponsible conduct. As a matter of law—as set forth more fully below—Defendant's arguments do not entitle him to a setting aside of the entry of default.

## LEGAL STANDARD

"Rule 55(c) provides that a court may set aside a default 'for good cause shown.'" *Franchise Holding II v. Huntington Rest.*, 375 F. 3d 922, 925 (9th Cir. 2004). "The good cause analysis considers three factors: (1) whether [movant] engaged in culpable conduct that led to the default; (2) whether [movant] had a meritorious defense; or (3) whether reopening the default…would prejudice [non-movant]. As these factors are disjunctive, the district court was free to deny the motion [to set aside default] 'if any of the three factors was true.'" *Id at 925-926.* (Internal citations omitted).

///

///

# ARGUMENT

## I.  DEFENDANT'S CULPABLE CONDUCT LED TO THE DEFAULT

"If a defendant 'has received actual or constructive notice of the filing of the action and failed to answer,' its conduct is culpable." *Id. Citing Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.,* 840 F. 2d 685, 690 (9th Cir. 1988). As described above, Defendant was given notice of the pending action on at least **8 separate occasions.** Defendant was also personally served with process. (*See* ECF No. 15.) Thus, Defendant had both actual and constructive notice of the action. Though Defendant asserts that he "has a number of physical and mental disabilities that contributed to [him] not responding to the Summons," (ECF No. 23 at 3), these disabilities did not prevent him from writing what is, in full, a well-articulated (though ultimately unmeritorious) set of arguments. Answering Plaintiff's Amended Complaint would have proven far less taxing than preparing the instant Motion. Even accepting, for the sake of argument, the proposition that Defendant was simply too ill to participate in the case until now, Defendant did not even bother to pursue ***any*** avenue that would indicate he took seriously his obligations under the law, such as informing the Court, or Plaintiff's counsel, of his medical issues. Defendant chose to do nothing, and as described herein, as well as in the Gibbs Declaration (ECF 19-1), Defendant had plainly expressed to Plaintiff that his intent was to do nothing. Defendant's culpable conduct clearly led to his default, and the entry of default should thus not be set aside.

## II.  REOPENING THE DEFAULT WOULD PREJUDICE PLAINTIFF

Plaintiff would undoubtedly be prejudiced if the default were to be reopened. Plaintiff began litigating this case against an unknown defendant on April 23, 2012 (*See* ECF No. 1.). Plaintiff filed its Amended Complaint naming Defendant on September 8, 2012. (*See* ECF No. 10.) Plaintiff personally served Defendant with process on October 12, 2012. (*See* ECF No. 15.) Defendant was not merely a few days late in entering the case; he was ***over a month late***. The *Franchise Holding II*

*Court* found prejudice to Plaintiff because, among other things, "[Defendant] filed no pleadings with the district court until ***after the clerk entered the default.***" *Franchise Holdings II* at 927 (Emphasis added). Similarly, Defendant in the instant action did not file any pleadings with the district court until after the Court entered default. Furthermore, Plaintiff has expended significant effort and expense to not only pursue the instant action, but also in dealing with Defendant's willfully ignoring his legal obligations, in the form of delay, the hearing on Defendant's Motion, and the introduction of new issues, all of which are factors that prejudice Plaintiff. *See Nilsson, Robbin, Et Al. v. Louisiana Hydrolec*, 854 F. 2d 1538, 1546 (9th Cir. 1998.) Reopening the default would thus prejudice Plaintiff.

### III.   DEFENDANT DOES NOT OFFER ANY MERITORIOUS DEFENSES

Plaintiff's agents observed Defendant's IP address infringing upon Plaintiff's copyright. Other than asserting that he does not have BitTorrent on his computer, Plaintiff offers little in the way of any defenses at all, much less meritorious ones. Defendant also misrepresents his exposure to BitTorrent, asserting that he "knew nothing about BitTorrent software before he received the Summons." (*See* ECF No. 23 at 3.) Indeed, Plaintiff's counsel informed Defendant about BitTorrent, as did the letters mailed to Defendant. Even if the Court determines that the solitary defense offered by Defendant in his Motion is a meritorious one, the fact remains that only ***one*** of the factors described in the Legal Standard Section has to be answered in the affirmative in order for a Court to rule against the setting aside of a default.

### IV.   DEFENDANT'S CONDUCT WAS INTENTIONAL AND INEXCUSABLE

In his Motion, Defendant repeatedly asserts that his failure to answer Plaintiff's Amended Complaint was the result of excusable neglect. Defendant's conduct was, however, both intentional and inexcusable. As described herein, and in the Gibbs Declaration (*See* ECF 19-1), Defendant had plainly, unambiguously, and repeatedly asserted to Plaintiff that he would not take part in this case.

Someone unable to participate as the result of medical issues might, for example, *indicate that that is the case*, either to the Court or to Plaintiff's counsel. Instead of responsibly addressing his legal obligations, Defendant clearly hoped that, if he did nothing, this would all just go away. Our legal system functions, in large part, on the basis of individuals complying with their legal obligations; the sort of willful disregard of these obligations exhibited by Defendant should simply not be allowed to stand. Once again, though the undersigned is sympathetic with respect to Defendant's medical condition, particularly given his own history of medical issues, the fact remains that Defendant has not offered a theory as to why he could not respond to Plaintiff's Amended Complaint before (an undoubtedly simpler task than that of preparing the Motion he has filed) within the required time limit. Defendant asserts that "because of [his] preoccupation with his health issues, he did not fully comprehend how his lack of response to the summons might have serious consequences." (ECF No. 23 at 3.) This would suggest that Defendant was somehow unfamiliar with the term "default"; the fact that he has filed the instant Motion to Set Aside right after default was entered, however, makes this suggestion disingenuous. To be perfectly clear, Defendant was informed when personally served with process that failure to respond within 21 days would result in Entry of Default. Thus, there is no way in which Defendant can assert that he is "more" aware now of the consequences than he was before; rather, this is simply a matter of Defendant believing that he was above facing the potential consequences of his willful ignorance of his legal obligations. Defendant does not once assert that he is any less preoccupied with his health issues than he was before; as such, he had the ability to respond to Plaintiff's Amended Complaint within the allotted time, but simply chose not to do so. His failure to respond was thus intentional rather than neglectful, and was certainly not excusable.

## CONCLUSION

For the reasons contained herein, Defendant's Motion to Set Aside Clerk's Entry of Default should be denied.

Respectfully Submitted,

PRENDA LAW INC.

**DATED: December 12, 2012**

By:     /s/ Brett L. Gibbs

Brett L. Gibbs, Esq. (SBN 251000)
Of Counsel to Prenda Law Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
blgibbs@wefightpiracy.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 12, 2012, all counsel of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system, and that a true and correct copy of the foregoing was sent via First-Class, postage prepaid to:

Parry Buck
17532 N. Bruella Road
Victor, CA 95253

**DATED: December 12, 2012**              By:                    /s/  Brett L. Gibbs, Esq.