IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

AF HOLDINGS LLC,

    Plaintiff,

No. 2:12-cv-01068 LKK KJN

v.

PARRY BUCK,

    Defendant.

<u>ORDER</u>

---

    In general, plaintiff AF Holdings LLC ("plaintiff") alleges that defendant Parry Buck ("defendant") infringed on plaintiff's copyrighted video entitled *Popular Demand* (the "Video").[1] (See generally First Am. Compl. ¶¶ 1, 3-4.)

    Presently before the court is defendant's Motion to Set Aside Clerk's Entry of Default ("Motion to Set Aside") (Mot. to Set Aside, Dkt. No. 23), filed in response to plaintiff's Motion for Default Judgment (Mot. for Default J., Dkt. No. 20).[2] Defendant filed an "Addendum" in support of his Motion to Set Aside. (Addendum, Dkt. No. 28). Defendant also

---

[1] This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(19) and 28 U.S.C. § 636(b)(1).

[2] Plaintiff filed its attorney's declaration in support of plaintiff's Motion for Default Judgment. (Declaration of Brett Gibbs ("Gibbs Decl."), Dkt. No. 20-1.)

1

filed correspondence from his medical provider (the "Letter") in support of his Motion to Set Aside. (Letter, Dkt. No. 29.) Plaintiff filed an opposition to the Motion to Set Aside (Opp'n, Dkt. No. 27) and an opposition to the Addendum (Opp'n to Addendum, Dkt. No. 30).

The undersigned has considered the papers and the appropriate portions of the record and, for the reasons stated below, the undersigned orders that defendant's Motion to Set Aside is granted, and that, accordingly, plaintiff's Motion for Default Judgment is denied.

I.  BACKGROUND

A.  Procedural History

Plaintiff filed its original complaint on April 23, 2012, naming John Doe as the defendant. (Compl., Dkt. No. 1.)

After requesting expedited discovery upon third party internet service providers, plaintiff was allegedly able to discover plaintiff's identity through his IP address of 76.125.61.233. Upon such discovery, plaintiff filed a First Amended Complaint, substituting the name "Parry Buck" in place of "John Doe." (First Am. Compl., Dkt. No. 10 ¶ 4.)

Defendant was personally served with process on October 12, 2012. (Proof of Service, Dkt. No. 15.)

On November 12, 2012, plaintiff requested that default be entered by the Clerk of Court against defendant. (Req. for Entry of Default, Dkt. No. 17.) On November 13, 2012, the Clerk of the Court entered defendant's default. (Clerk's Cert. of Entry of Default, Dkt. No. 18.) In entering default, the Clerk of Court stated that it appeared from the record and papers on file in the action that defendant was duly served with process yet failed to appear, plead, or answer plaintiff's complaint within the time allowed by law. (Id.)

On November 16, 2012, plaintiff filed its motion for default judgment against defendant and served a copy of the motion on defendant via first class mail. (Proof of Service, Mot. for Default J. at 10.) The matter was set for hearing on December 20, 2012.

////

On December 7, 2012, defendant filed his Motion to Set Aside. (Mot. to Set Aside, Dkt. No. 23.) Plaintiff opposed the motion. (Opp'n, Dkt. No. 27.) Given these filings, the undersigned vacated the hearing date for the Motion for Default Judgment.[3]

B.   Summary Of Plaintiff's Allegations

Plaintiff asserts claims of copyright infringement, contributory infringement, and negligence in regards to its copyrighted Video. (See generally First Am. Compl.) Plaintiff alleges that it is the "exclusive holder of the relevant rights" with respect to the Video.[4] (Id. ¶ 2.)

Plaintiff alleges that defendant used an online peer-to-peer media distribution system, a "BitTorrent" file sharing protocol, to download the Video and then distribute the Video to numerous, unidentified third parties.[5] (See First Am. Compl. ¶¶ 4, 22-24.)

---

[3]   The undersigned's order provided that, if necessary, the court would *sua sponte* set a hearing to address the parties' briefing. (Order, Dkt. No. 26.) The undersigned has determined that no hearing is necessary, however, and that these matters are suitable for determination on the papers and without oral argument. E. Dist. Local Rule 230(g).

[4]   Plaintiff alleges that the Video is currently registered with the U.S. Copyright Office, and that plaintiff "received the rights to the Video pursuant to an assignment agreement." (First Am. Compl. ¶ 19 & Exs. A-B.) Pursuant to 17 U.S.C. § 501(b), the "legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." Silvers v. Sony Pictures Entm't, Inc., 402 F.3d 881, 884 (9th Cir. 2005) (en banc) (emphasis omitted).

[5]   The pleading generally describes the mechanics of the BitTorrent protocol. (First Am. Compl. ¶¶ 8-17; see also Dkt. No. 7 at ¶¶ 8-13, Doc. No. 7-1.) A magistrate judge in the Northern District of California summarized the BitTorrent protocol as follows:

> In the BitTorrent vernacular, individual downloaders/distributors of a particular file are called "peers." The group of peers involved in downloading/distributing a particular file is called a "swarm." A server which stores a list of peers in a swarm is called a "tracker." A computer program that implements the BitTorrent protocol is called a BitTorrent "client."
>
> The BitTorrent protocol operates as follows. First, a user locates a small "torrent" file. This file contains information about the files to be shared and about the tracker, the computer that coordinates the file distribution. Second, the user loads the torrent file into a BitTorrent client, which automatically attempts to connect to the tracker listed in the torrent file. Third, the tracker responds with a list of peers and the BitTorrent client

3

II.     LEGAL STANDARDS

Federal Rule of Civil Procedure 55 governs the entry of default by the clerk and the subsequent entry of default judgment by either the clerk or the district court. In relevant part, Rule 55(a) provides:

> **(a) Entering a Default.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

Fed. R. Civ. P. 55(a).[6]

Federal Rule of Civil Procedure 55(c) provides that "[t]he court may set aside an entry of default for good cause." A court considers three factors in determining whether good cause exists: "'(1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default judgment would prejudice' the other party." United States v. Signed Personal Check No. 730 of Yubran S. Mesle, 615 F.3d 1085, 1091-94 (9th Cir. 2010) (hereinafter, "Mesle") (modification in original) (quoting Franchise Holding II v. Huntington Rests. Group, Inc., 375 F.3d 922, 925-26 (9th Cir. 2004)). Under this disjunctively framed standard, "a finding that any one of these factors is true is sufficient reason for the district court

---

> connects to those peers to begin downloading data from and distributing data to the other peers in the swarm. When the download is complete, the BitTorrent client continues distributing data to the peers in the swarm until the user manually disconnects from the swarm or the BitTorrent client otherwise does the same.

Diabolic Video Prods., Inc. v. Does 1-2099, No. 10-CV-5865-PSG, 2011 WL 3100404, at *1-2 (N.D. Cal. May 31, 2011) (unpublished).

[6] As the Ninth Circuit Court of Appeals has stated, Rule 55 requires a "two-step process" consisting of: (1) seeking a clerk's entry of default, and (2) filing a motion for the entry of default judgment. See Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986) ("Eitel apparently fails to understand the two-step process required by Rule 55."); accord Symantec Corp. v. Global Impact, Inc., 559 F.3d 922, 923 (9th Cir. 2009) (noting that Rules 55(a) and (b) provide a two-step process for obtaining a default judgment).

to refuse to set aside the default." Id.; Brandt v. Am. Bankers Ins. Co., 653 F.3d 1108, 1111 (9th Cir. 2011). The party seeking relief from the entry of default bears the burden of showing that these factors favor such relief. See Franchise Holding II, 375 F.3d at 926.

"The court's discretion is especially broad where . . . it is entry of default that is being set aside, rather than a default judgment." O'Connor v. State of Nev., 27 F.3d 357, 364 (9th Cir. 1994). A court may within its discretion grant relief from default even after finding one of the "good cause" factors to be true. E.g., Brandt, 653 F.3d at 1111 ("A district court may exercise its discretion to deny relief to a defaulting defendant based solely upon a finding of defendant's culpability, *but need not*.") (emphasis added).

Resolution of a motion to set aside the entry of default is necessarily informed by the well-established policies favoring resolution of lawsuits on the merits and generally disfavoring default judgments. See Mesle, 615 F.3d at 1091 ("Crucially, . . . judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.") (citation and quotation marks omitted); Westchester Fire Ins. Co. v. Mendez, 585 F.3d 1183, 1189 (9th Cir. 2009) ("As a general rule, default judgments are disfavored; cases should be decided upon their merits whenever reasonably possible."). Moreover, a panel of the Ninth Circuit Court of Appeals has recognized that the Court of Appeals's "rules for determining when a default should be set aside are solicitous towards movants, especially those whose actions leading to the default were taken without the benefit of legal representation." Mesle, 615 F.3d at 1089.

III.   DISCUSSION

    A.   Whether Defendant Engaged In Culpable Conduct That Led To The Default

Defendant argues that his medical conditions caused his failure to timely appear in this action. (Mot. to Set Aside at 3.) Specifically, defendant argues that he "has a number of physical and mental disabilities that contributed to [his] not responding to the Summons," and that this case initially "confused" him. (Id.) Defendant explains that his "preoccupation with his

5

health issues" meant he "did not fully comprehend how his lack of response to the Summons might have serious consequences." (Id.) Defendant goes on to list the various ailments for which he is on prescription medications. (Id. at 4 (attaching letter from medical provider listing defendant's medical conditions and medications).) Defendant concludes by explaining that his "mental ability to understand how to respond to the Summons was compromised by the stress" resulting from his chronic pain, anxiety disorder, and other ailments. (Id. at 5.)

In response, plaintiff argues that defendant has long been aware of this action, never informed court or counsel of his medical issues, and stated outright to plaintiff's counsel that he did not intend to participate in this lawsuit. (Opp'n at 4, 6-7; Gibbs Decl. ¶¶ 6-7.) Plaintiff argues that defendant's disabilities "did not prevent him from writing what is, in full, a well-articulated" motion. (Id.) Plaintiff argues that answering plaintiff's pleading would have been "far less taxing" than preparing the Motion to Set Aside. (Id.) Plaintiff also argues that even taking defendant's representations about his health issues as true, the fact remains that "defendant did not even bother to pursue *any* avenue that would indicate he took seriously his obligations under the law, such as informing the Court, or Plaintiff's counsel, of his medical issues." (Id.) Plaintiff argues that because plaintiff "chose to do nothing" in response to the Summons, and had "plainly expressed to Plaintiff his intent to do nothing," defendant has engaged in "culpable conduct," warranting the denial of defendant's motion to set aside the entry of default. (Id.) Plaintiff essentially argues that defendant's representations about medical issues are less than credible given that defendant never previously mentioned them to plaintiff's counsel, and therefore that defendant's failure to respond to the Summons was intentional and inexcusable. (Id. at 6-7.)

With respect to a defendant's potentially "culpable" conduct, two standards governing this inquiry have arisen in decisions of the Ninth Circuit Court of Appeals. Under one line of cases announcing a more stringent standard, a defendant's conduct is culpable if he or she "'has received actual or constructive notice of the filing of the action and failed to answer.'"

6

Franchise Holding II, 375 F.3d at 926 (quoting Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc., 840 F.2d 685, 690 (9th Cir. 1988)).  Under the second line of cases, "a defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 697 (9th Cir. 2001) (hereinafter, "TCI Group") (emphasis in original, citation and quotation marks omitted).  Under the latter formulation, the "the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" Mesle, 615 F.3d at 1092 (citation omitted) (stating, in addition, that "it is clear that simple carelessness is not sufficient to treat a negligent failure to reply as inexcusable, at least without a demonstration that other equitable factors, such as prejudice, weigh heavily in favor of denial of the motion to set aside a default").

In the Court of Appeals's decision in Mesle, the panel explained that the standard from Franchise Holding II, which does not consider the defaulting party's intent, does not represent the "ordinary standard" for Rule 55(c) motions. Mesle, 615 F.3d at 1093.  The panel in Mesle further stated that "[i]t is possible to reconcile" the two standards and that whether one standard or the other would be applied might depend on the sophistication of the defaulting party. Id. (stating that the court had "never" applied the standard from Franchise Holding II to deny relief "except when the moving party is a legally sophisticated entity or individual").  The panel suggested that the tougher standard from Franchise Holding II potentially applies when the defaulting party is legally sophisticated or represented by counsel because "[w]hen considering a legally sophisticated party's culpability in a default, an understanding of the consequences of its actions may be assumed, and with it, intentionality." Id.  However, the panel did not expressly resolve the question because the defaulting party in Mesle was not a lawyer and was not represented by counsel. Id. ("Here, we need not determine, however, whether the Franchise

7

Holding II standard applies to more than sophisticated parties represented by counsel who may be presumed to be aware of the consequences of their actions.  It is sufficient to observe that Mesle is not a lawyer and that he was unrepresented at the time of the default; accordingly, the proper standard to apply was that of TCI Group.").

Here, as in Mesle, nothing suggests that defendant is an attorney, and defendant was not represented by counsel in this action at the time of the entry of default.  No attorney has appeared on defendant's behalf.  Thus, the standard from TCI Group applies here.  See Mesle, 615 F.3d at 1092-93 (We have "typically held that a defendant's conduct was culpable for purposes of the [good cause] factors where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond.") (quoting TCI Group, 244 F.3d at 697-97) (modification in Mesle).

Applying this standard, the undersigned cannot conclude with certainty that defendant "intentionally" failed to answer.  Although plaintiff has taken the time to file declarations in support of service and to describe numerous written and verbal communications informing defendant of this action, the undersigned finds that defendant did not *intentionally* fail to answer as described in Mesle.  While plaintiff emphasizes defendant's having stated that he would "not participate" in the litigation (Gibbs Decl. ¶¶ 6-7), given defendant's explanations of his medical circumstances, confusion, and failure to appreciate the impact of failing to timely respond to summonses, such statements do not necessarily confirm that defendant intentionally failed to respond in bad faith under Mesle.  In other words, defendant has offered an explanation for his behavior that is "inconsistent with" a "devious, deliberate, willful, or bad faith failure to respond."  See Mesle, 615 F.3d at 1092-93.  Further, defendant's diligence in seeking to set aside the entry of default reveals no disrespect for the courts.  See TCI Group, 244 F.3d at 699.  On the record before the court, the undersigned does not find that defendant, who is proceeding without counsel, possessed the bad faith required to deny the motion to set aside the entry of default.
////

B.      Whether Defendant Has A Meritorious Defense

The parties disagree about whether defendant has a "meritorious defense" in this case. See Mesle, 625 F.3d at 1091-94.  Regarding whether a defaulting defendant has a meritorious defense, the Ninth Circuit Court of Appeals has stated that, at least in the context of relief from the entry of a default judgment, the defaulting defendant must "present the district court with specific facts that would constitute a defense." Franchise Holding II, 375 F.3d at 926. This burden is not "extraordinarily heavy." Mesle, 615 F.3d at 1094 (citing TCI Group, 244 F.3d at 700). "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense: 'the question whether the factual allegation [i]s true' is not to be determined by the court when it decides the motion to set aside the default.  Rather, that question 'would be the subject of the later litigation.'" Id. (citing TCI Group, 244 F.3d at 700).

Here, defendant argues that he can establish a potential defense in this action. (Addendum at 2-3.)  Defendant essentially describes facts supporting a lack-of-knowledge, lack-of-intent defense: he did not know BitTorrent software was on his computer; he was unaware that when he set up a router for use by his daughter and himself, this also established a "neighborhood wifi" network that third parties could access; and some unknown third party must have used his network to infringe upon plaintiff's copyrighted Video. (Id.)

Plaintiff counters that defendant's admission that he failed to follow certain steps in the set-up instructions for his router confirm he negligently infringed upon plaintiff's copyright. (Opp'n to Addendum at 2-3 (arguing that because defendant admits that he "chose to ignore" parts of the set-up instructions, his conduct "falls perfectly within the Negligence claim asserted by Plaintiff in its Amended Complaint.").)  However, plaintiff's briefing did not squarely address whether defendant's proffered factual explanation, if ultimately proven true, could potentially constitute a defense to each of the claims in this case. See Mesle, 615 F.3d at 1094.

9

Defendant has presented the court "with specific facts that would constitute a defense" in this case, namely, the defendant's lack of knowledge of any infringing activities. Defendant's knowledge is an element of plaintiff's "contributory infringement" claim. See UMG Recordings, Inc. v. Shelter Capital Partners LLC, 667 F.3d 1022, 1046 (9th Cir. 2011) ("[O]ne who, with *knowledge* of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer.") (emphasis added). Plaintiff's papers do not squarely address the impact of defendant's proffered facts upon the "knowledge" element of its contributory negligence claim. Because knowledge is an element to a claim in this case — indeed, a claim upon which plaintiff seeks entry of default judgment — defendant has met his minimal burden under the "meritorious defense" prong. Mesle, 615 F.3d at 1094 (characterizing burden under "meritorious defense" prong as "minimal"); cf. Franchise Holding II, 375 F.3d at 926 ("meritorious defense" prong not met where party offered "only conclusory statements," not "specific facts that would constitute a defense").

Plaintiff seeks entry of default judgment upon claims for contributory infringement and copyright infringement.[7] (See generally, Mot. for Default J.) Plaintiff chose not to seek entry of default judgment upon the alleged "negligence" claim. (Id.) In opposing the Motion to Set Aside, however, plaintiff focuses almost exclusively on the negligence claim. (Opp'n to Addendum at 3-4.) Plaintiff emphasizes defendant's admission that he skipped steps when setting up his router, arguing that this reveals defendant's carelessness and actually helps *prove* plaintiff's negligence claim rather than suffice as a "meritorious defense" to it. (Id.) Yet plaintiff fails to cite authorities supporting the argument and fails to compellingly develop the argument in the particular context of the pending motion. That plaintiff arguably has evidence

---

[7] Incidentally, as to plaintiff's other claims, while defendant's knowledge and intent are not necessarily elements of claims for copyright infringement and negligence, plaintiff's Motion for Default Judgment seeks $150,000 in statutory damages for "willful" infringement. (Mot. for Default J. at 7-8 (citing 17 U.S.C. § 504(c)(2)).) The specific facts defendant proffers in his defense, if ultimately proven true, would negate "willfulness" and render such damages unavailable.

supporting one of its three claims is not within the scope of the pending Motion to Set Aside.

In any event, rather than sort out the ultimate merits of the parties' respective positions, which is not the task to be undertaken in considering a motion to set aside a clerk's entry of default, the undersigned finds that defendant has proffered specific facts suggesting a potentially meritorious defense to the "knowledge" element of plaintiff's contributory negligence claim. This warrants setting aside the clerk's entry of default. Whether plaintiff's or defendant's legal theories ultimately win the day is more properly the subject of later litigation.

### C. Whether Plaintiff Would Be Prejudiced By Setting Aside The Default

Finally, the parties dispute whether plaintiff would suffer prejudice if the court set aside the entry of default. Plaintiff contends that it would suffer prejudice because it has "expended significant effort and expense to not only pursue the instant action, but also in dealing with Defendant's willfully ignoring his legal obligations, in the form of delay, the hearing on Defendant's Motion, and the introduction of new issues." (Opp'n at 5.)

The Ninth Circuit Court of Appeals has held that "[t]o be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case. Rather, 'the standard is whether [plaintiff's] ability to pursue his claim will be hindered.'" TCI Group, 244 F.3d at 701 (citing Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984) (per curiam)). Merely being forced to litigate on the merits cannot be considered prejudicial in this context. Id.

The undersigned finds plaintiff's proffered bases for a finding of prejudice unpersuasive. Mere delay of the resolution of the action is insufficient to show prejudice, and the fact that plaintiff has to date "expended significant effort and expense" to "pursue the instant action" is not compelling. (Opp'n at 5.) Plaintiff would have had to expend effort and expense to litigate its case even if defendant had immediately responded to the Summons. While plaintiff represents that "new issues" have been introduced in this case, it appears that these "issues" are simply defendant's health conditions and his theory of defense, and neither clearly fits within the definition of "prejudice" required here. See TCI Group, 244 F.3d at 701. Accordingly, the

undersigned finds that plaintiff's ability to pursue its claim will not be hindered by setting aside the entry of default.

Taking all of the factors in consideration, the undersigned orders that the clerk's entry of default is set aside. In addition to the three factors discussed above, the undersigned gives great weight to the established policies favoring resolution of claims on the merits and disfavoring default judgments, especially when a pro se party is the subject of the default.

Notwithstanding the foregoing, the undersigned is sympathetic to litigants facing opposing parties who may be tempted to make a habit of missing deadlines and failing to follow the rules of litigation procedure and/or court orders. At present, the undersigned has given defendant the benefit of the doubt and has accepted his explanations for failing to timely respond to the summons. However, should defendant fail to promptly meet his obligations to court and counsel in the future, the undersigned may recommend that defendant be sanctioned. Defendant is on notice that, despite his medical conditions, he is a party to this action and subject to the rules governing all litigants, including those without attorneys. Defendant shall endeavor in good faith to comply with applicable deadlines, court orders, and to meet and confer with opposing counsel. Now that defendant is aware of what is expected of him, he should plan to budget ample time to review case materials, court orders, etc., so as to allow his timely compliance with deadlines despite his medical conditions. Should defendant require additional time to meet deadlines for medical reasons, defendant should meet and confer with opposing counsel and, if necessary, *shall request extensions of time from the court well in advance of the deadline(s) at issue.* E. Dist. Local Rule 144(d) ("Counsel shall seek to obtain a necessary extension from the Court or from other counsel or parties in an action as soon as the need for an extension becomes apparent. Requests for Court-approved extensions brought on the required filing date for the pleading or other document are looked upon with disfavor.") Failure to do so may result in

////

////

sanctions and/or the denial of the requested extension(s).[8]

## IV. PREEMPTION

Defendant cites an out-of-circuit district court case and argues that plaintiff's negligence claim is preempted. (Addendum at 4.) Plaintiff disagrees. (Opp'n to Addendum at 3-4.) However, given that the undersigned has determined that there is good cause to set aside the clerk's entry of default in this case, the undersigned makes no determination regarding defendant's preemption argument and plaintiff's response thereto.

## V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Good cause appearing, defendant's Motion to Set Aside the Clerk's Certificate of Entry of Default (Dkt. No. 23) is granted.

2. The Clerk's Certificate of Entry of Default (Dkt. No. 18) is set aside.

3. Defendant shall file and serve his answer or responsive pleading to plaintiff's operative complaint no later than 30 days of the date of this order.

4. Because the Clerk's Entry of Default is set aide, plaintiff's Motion for

---

[8] Eastern District Local Rule 110 provides that "[f]ailure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions authorized by statute or Rule or within the inherent power of the Court." Moreover, Eastern District Local Rule 183(a) provides, in part:

> Any individual representing himself or herself without an attorney is bound by the Federal Rules of Civil or Criminal Procedure, these Rules, and all other applicable law. All obligations placed on "counsel" by these Rules apply to individuals appearing in propria persona. Failure to comply therewith may be ground for dismissal . . . or any other sanction appropriate under these Rules.

See also King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) ("Pro se litigants must follow the same rules of procedure that govern other litigants."). Failure to comply with court orders may result in sanctions, including entry of default judgment against defendant. Thompson v. Housing Auth. of City of L.A., 782 F.2d 829, 831 (9th Cir. 1986) (per curiam) ("District courts have inherent power to control their dockets. In the exercise of that power they may impose sanctions including, where appropriate, default or dismissal."); accord In re Phenylpropanolamine (PPA) Products Liability, 460 F.3d 1217, 1227 (9th Cir. 2006) (quoting Thompson).

Default Judgment (Dkt. Nos. 19-20) is denied.

   5. Going forward, defendant shall endeavor in good faith to comply with applicable deadlines, court orders, and to meet and confer with opposing counsel. Now that defendant is aware of what is expected of him, he should plan to budget ample time to review case materials, court orders, etc., so as to allow his timely compliance with deadlines despite his medical conditions. Should defendant require additional time to meet deadlines for medical reasons, defendant should meet and confer with opposing counsel and, if necessary, *shall request extensions of time from the court <u>well in advance of</u> the deadline(s) at issue.* Failure to do so may result in sanctions and/or the denial of the requested extension(s).

   IT IS SO ORDERED.

DATED: January 3, 2013

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE